

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION[1]

No. 04-20-00611-CV

**INTEREST OF L.J.L.** and J.W.L., Minor Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-08129
Honorable Angelica Jimenez, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Concurring Opinion by: Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice (concurring in the judgment)
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice (concurring in the judgment without opinion)

Delivered and Filed: June 29, 2022

AFFIRMED AS MODIFIED

Appellant Justin W. Little appeals from the trial court's final orders entered after the

rendition two Rule 11 agreements between Appellant and Appellee Christy B. Little.  In three

points of error, Appellant contends the trial court erred in entering the Rule 11 agreements as

orders of the court because they (1) lacked essential elements necessary to support such

agreements; (2) failed to conform to the agreed upon terms; and (3) added material terms not

otherwise supported by evidence.

---

[1] A majority of the panel agrees on the judgment.  *See* TEX. R. APP. P. 41.1(a).  However, no part of the opinion has been approved by a majority of the panel; thus, there is no majority opinion of the court.  *See* TEX. R. APP. P. 47.2(a).

**Background**

Appellant and Appellee divorced in August 2018. In their divorce decree, they were designated joint managing conservators of their two children. In September 2020, Appellee filed a petition to modify the parent-child relationship and to enjoin harassing behavior. She also filed an application for a protective order. Appellant filed a general denial.

The parties began a motions hearing on October 26, 2020, to resolve these issues before the court. On October 28, 2020, the parties halted the hearing and came to an agreement. Appellee's attorney read the terms of the agreement into the record. Appellant and Appellee agreed to the terms on the record. The trial court approved the agreement and rendered it as a final order, disposing of all orders before the court. The trial court set a hearing date in November 2020 to enter the order.

After the rendition of the trial court's order but before the hearing to enter it, Appellee filed a motion to enter the orders, a motion to reconsider the orders, an emergency motion to suspend Appellant's access to the children, and a motion for severance of her tort claims against Appellant from their divorce case. Appellee alleged that Appellant had already violated the terms of their agreement and wanted further modification of the agreement but conceded that the rendered judgment had to be entered before she could move for further changes to it.

At the hearing to enter the trial court's orders, Appellant's counsel announced not ready and moved to continue. He stated that Appellee's filings caused Appellant to reconsider the agreement in toto and that Appellant intended to hire new counsel. The trial court explained that the agreement had already been rendered as a final order. The trial court stated that the hearing to enter the order was meant to ensure that the final written order matched the terms of the agreement from the October 28, 2020 hearing. The trial court denied Appellant's counsel's motion to continue. Appellant was not present.

The trial court examined Appellee's proposed written terms of the parties' Rule 11 agreement. It overruled and sustained objections to the added provisions in Appellee's proposed order. The trial court signed the orders on November 20, 2020. Appellee's counsel signed the orders to approve them as to form, but Appellant's counsel did not.

On December 21, 2020, Appellant filed a motion for new trial, challenging the signed orders. The trial court did not address the motion for new trial, and the motion was denied by operation of law on February 4, 2021. Appellant filed his notice of appeal concurrent with his motion for new trial. We now address Appellant's points of error.

## Rule 11 Agreements

### A. Essential Elements Necessary to Support an Agreement

In the first of three points of error, Appellant contends that the trial court erred in entering its orders because they lacked essential elements necessary to support the parties' agreements. We disagree. After two days of motions hearing, the parties came to an agreement, and Appellee's counsel read the terms into the record. At the end of the in-court recitation, Appellee's counsel asked each party if they understood the terms and agreed to them. Each party responded that they did. Appellee's counsel also asked if the parties agreed to be bound to the terms if the trial court approved the agreements and rendered judgment. Each party said that they did. The trial court asked each party if they believed their agreement was in the best interests of their children, and they agreed that it was. The trial court approved the agreement, rendered it as a final order, and disposed of all issues before the court as agreed.

### 1. Standard of Review

"The issue of whether a settlement agreement fails for lack of an essential term is a question of law to be determined by the court, unless there is ambiguity or unless surrounding facts and circumstances demonstrate a factual issue as to an agreement." *Ronin v. Lerner*, 7 S.W.3d 883,

888 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *Browning v. Holloway*, 620 S.W.2d 611, 615 (Tex. App.—Dallas 1981, writ ref'd n.r.e.).

### 2. Statement of Law

Rule 11 provides for parties to enter agreements on the record that are enforceable via court order. *See* TEX. R. CIV. PROC. 11; *Padilla v. LaFrance*, 907 S.W.2d 454, 459 (Tex. 1995). To create an enforceable Rule 11 agreement, parties must submit their agreement "in writing, signed and filed with the papers as part of the record" or make their agreement "in open court and entered of record." *Id*. "The purpose of Rule 11 is to ensure that agreements of counsel affecting the interests of their clients are not left to the fallibility of human recollection and that the agreements themselves do not become sources of controversy." *ExxonMobil Corp. v. Valence Operating Co*., 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 464 (Tex. 1995) (Enoch, J., dissenting)). This means that if parties simply make an oral agreement that is not memorialized on the record, it will not be enforceable. *See Matthews v. Looney*, 123 S.W.2d 871 (Tex. 1939). But if parties make an agreement to dispose of their case in open court and the court renders judgment, then the agreement is enforceable as a contract. *See ExxonMobil Corp*., 174 S.W.3d at 309 (citing *Padilla*, 907 S.W.2d at 461).

A Rule 11 agreement could fail if it lacked essential elements. *See Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). But it is important to note that "[e]ssential terms are those terms that the parties 'would reasonably regard as vitally important elements of their bargain.'" *Id.* (quoting *Potcinske v. McDonald Prop. Invs., Ltd*., 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "[T]he fact that the parties have left certain terms open for negotiation in an agreement that they intend to be binding does not make the agreement indefinite." *Id*. at 752; *accord Kanan v. Plantation Homeowner's*

*Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi 2013, no pet.). Additional terms may not be necessary to support a Rule 11 agreement's effectiveness. *See Stergiou*, 438 S.W.3d at 747; *Kanan*, 407 S.W.3d at 330.

### 3. Analysis

Here, the Rule 11 agreement explicitly modified the parent relationships with the children, set out custody details, and enjoined Appellant from contacting Appellee in certain manners or under certain circumstances. "These terms provided a basis for determining the existence of a breach and for giving an appropriate remedy, meaning they are sufficiently definite to enable a court to ascertain the parties' respective legal obligations." *Stergiou*, 438 S.W.3d at 752. Appellant identifies certain details as missing or questions as left open, but "to the extent these particular provisions are missing from the Rule 11 agreement, the cases on which Appellant primarily relies do not persuade us that the parties intended those provisions to be 'vitally important elements of their bargain.'" *Stergiou*, 438 S.W.3d at 746.

**Alleged Material and Essential Terms—rights, duties, and powers of the parties**

Appellant argues that the Rule 11 agreement failed to specify the rights, duties, and powers of each party as required under section 153.071 of the Texas Family Code. However, parties agreed that Appellee would be designated sole managing conservator, which includes many explicit statutory rights under Texas Family Code section 153.132. *See In re Reiter*, 404 S.W.3d 607, 610 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Furthermore, the parties outlined specific terms regarding Appellant's possessory rights during the Rule 11 recitation, which the trial court then accepted and rendered as an order of the court. *See id*. Appellant entered into the Rule 11 agreement modifying the parenting terms of the parties' final divorce decree. Those terms, once accepted by the court, satisfied the court's obligation to specify the parents' rights and duties. *See* TEX. FAM. CODE ANN. § 153.071; *Interest of J.P.*, No. 13-18-00648-CV, 2020 WL 103858, at *6

(Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, pet. denied) (mem. op.) (statutory terms implicit in agreement); *see also McLendon v. McLendon*, 847 S.W.2d 601, 606 (Tex. App.—Dallas 1992, writ denied) (holding that the law "only requires the parties to reach an agreement as to all material terms of the agreement").

Appellant also argues that the Rule 11 agreement is unenforceable because it does not provide for the manner in which the parties will choose Appellant's visitation weekends. However, this "argument is based on the [false] premise that the parties must agree to *all* terms of a settlement agreement before the court can render an agreed judgment." *McLendon*, 847 S.W.2d at 606. As stated in *McLendon*:

> The law does not require the parties to dictate and agree to all of the provisions to be contained in all of the documents necessary to effectuate the purposes of the agreement; it only requires the parties to reach an agreement as to all material terms of the agreement and prevents the trial court from supplying additional terms to which the parties have not agreed.

*Id*. (citing *Rogers v. Rogers*, 806 S.W.2d 886, 888 (Tex. App.—Corpus Christi–Edinburg 1991, no writ).

Appellant argues that it is unclear whether he may fly the children to Texas during summer or holidays pending his treatment. We disagree. The transcript of the Rule 11 agreement states: "[A]ll of his periods of possession of the children on the monthly visitation will be in Arkansas and this is all pending his treatment." Appellant also questions what it means for his appointed gatekeeper to sign off on his treatment, but we disagree that this is a material term of the agreement. *See id*. Appellant questions what it means to be entitled to an "essentially [] standard possession for long distance travel," though the question is answered in the preceding sentence: "The most dad can have in the summer is three two-week periods with two weeks in between…." Appellant questions how his appointed gatekeeper, a qualified doctor, is to monitor his progress in therapy.

He questions how his wife is supposed to know that she must be supportive of Appellee's move to Arkansas. He questions what it means to be supportive. Appellant may be able to conjure questions about the parties' agreement ad infinitum, but the questions he raises do not establish that the parties failed to achieve a meeting of the minds on the provisions they agreed to. *See McLendon*, 847 S.W.2d at 606.

**Alleged Material and Essential Terms—dialectic behavioral therapy (DBT)**

Appellant states that he has many questions about the dialectic behavioral therapy (DBT) that he agreed to engage in, such as where it will take place and whether the course of treatment may be shortened. As for the duration of the DBT, the transcript of the Rule 11 agreement states: "These programs are 24 weeks, but Dr. Theis has advised us both this morning or all of us this morning that most people need a course of 48 weeks. So it would not be unusual at the end of the first 24 weeks to extend that for another 24-week period." As for the location of the treatment, the transcript of the Rule 11 agreement states: "Mr. Little will need to sign authorizations for Dr. Murphey to obtain all of his records and to talk to whomever she needs to there at the clinic or institute where he's going and she will report if he does something like drop out or is not in compliance." From this agreement, we understand the material terms of the agreement to be that Appellant must participate in a DBT program that his gatekeeper can monitor. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 758–65 (Tex. 2018). Appellant's medical or logistical questions do not undermine the validity of the parties' agreement. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). If the parties must replace their gatekeeper, we also do not view this as materially fatal to the parties' agreement. *See id*. As for who must pay for the gatekeeper, the parties agreed that the monitored DBT would occur "at dad's sole cost and expense as recommended by Dr. Theis."

**Alleged Material and Essential Terms—SoberLink or similar monitoring program**

Appellant argues that the terms surrounding his alcohol monitoring program are too vague. However, the parties agreed: "[Appellant] will engage in a SoberLink or similar type monitoring program with both K. Garrett, my paralegal, and Dr. Murphey authorized to receive notifications of noncompliance or a bad test." We understand the material requirement here to be that Appellant must submit to alcohol testing through an alcohol monitoring program that reports to specified gatekeepers in order for Appellant to maintain his possessory rights. *See id*.

**Alleged Material and Essential Terms—terms conflict with legal rights or public policy**

Appellant argues that the agreement conflicts with Texas and federal law because it allows Appellee to monitor his electronic communications with their children. Similarly, Appellant argues that the protective order[2] could not legally issue without a finding of family violence. However, the parties expressly agreed to both of these terms. "A party cannot appeal from a judgment to which []he has consented or agreed absent an allegation and proof of fraud, collusion, or misrepresentation." *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 161 (Tex. App.—Dallas 2008, no pet.).

**Alleged Material and Essential Terms—children's therapy in Arkansas**

Appellant argues that the Rule 11 agreement fails to settle details surrounding the children's therapy in Arkansas. However, Appellee, as the sole managing conservator, has the right to choose the children's therapist and arrange for the therapy. *See* TEX. FAM. CODE ANN. § 153.132(3). This issue was not raised as a material term during the Rule 11 agreement hearing. *See Scott v. Am. Home Mortgage Servicing, Inc*., No. 03-14-00322-CV, 2015 WL 8593622, at *3 (Tex. App.—Austin Dec. 8, 2015, pet. denied) (mem. op.) (citing *Scott v. Ingle Bros. Pac., Inc*.,

---

[2] Appellant argues that the protective order contains terms he did not agree to. We address this issue in the next section concerning conforming orders.

489 S.W.2d 554, 555–56 (Tex.1972)). We understand the duration of the therapy, if it does not depend on the recommendation of the doctor, to at least not be material to the parties' agreement. *See id*.

**Distinguishable Authorities**

Appellant cites several cases to support his argument that Rule 11 agreements can be considered defective and void if they leave any questions open as to the details of the material terms or the potential manner of enforcement, but the cases are distinguishable. For example, in an oft-cited Rule 11 case from 1939, the parties entered into an oral agreement in court without memorializing the terms. *Matthews v. Looney*, 123 S.W.2d 871 (Tex. 1939). The trial court wrote: "11/22/32. Judgment by agreement, probating will fixing lien on property in favor of contestants and interveners, as per decree." *Id*. at 871. This notation was not considered to be an enforceable Rule 11 agreement. *See id*. at 873–74. The subsequent "judgment tendered for entry… contained many terms as to notes, amounts, dates, interest, property, etc., not mentioned in the notation upon the docket, [] which had to be supplied from testimony which in some particulars was conflicting and contradictory." *Id*. The cause had to be "remanded for disposition on the merits." *Id*. at 874.

Similarly, in *Vineyard v. Wilson*, 597 S.W.2d 21, 23 (Tex. App.—Dallas 1980, no writ), parties agreed that custody would change. That agreement was too broad and general to support the specific terms of the trial court's subsequent order regarding the terms of the custody change. *See id*. The judgment was reversed, and the case was remanded to the trial court. *Id*.

Appellant also cites *Matter of Marriage of Ames*, 860 S.W.2d 590, 591 (Tex. App.—Amarillo 1993, no writ), in which the trial court's order added a term of tax liability that was not included in the parties' original agreement. The order was reversed for failing to conform. *See id*. at 594. This subject touches on Appellant's second point of error.

Regarding whether the terms announced on the record in this case supported a Rule 11 agreement, we conclude that they did. We therefore overrule Appellant's first point of error and move on to the next.

## B. Conforming Orders

Appellant asserts that the trial court's written orders from November 20, 2020, do not conform to the agreement made by the parties on October 28, 2020, and that the orders must be void as a result. Appellee argues that the differences between the orally rendered agreement and the signed orders were either waived or are immaterial or clerical. From reviewing the record and relevant caselaw, we conclude that the signed order was required to match the orally rendered agreement strictly or literally[3] and that it did not. Our assessment follows.

### 1. Standard of Review

A trial court errs if it signs a consent judgment that does not conform with the terms of an orally rendered Rule 11 agreement. *See, e.g., Donzis v. McLaughlin*, 981 S.W.2d 58, 63 (Tex. App.—San Antonio 1998, no pet.) (citing *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976)); *Clanin v. Clanin*, 918 S.W.2d 673, 678 (Tex. App.—Fort Worth 1996, no writ). Where such an error occurs, we may reverse and remand for the trial court to "reform the [order] and enter[] judgment in accordance with the agreement reached by the parties…." *Clanin*, 918 S.W.2d at 678; *accord Tinney v. Willingham*, 897 S.W.2d 543, 545 n.2 (Tex. App.—Fort Worth 1995, no writ). We may also correct the errors as clerical variances. *See Valdez v. Valdez*, 930 S.W.2d 725, 729 (Tex. App.—Houston [1st Dist.] 1996, no writ).

---

[3] *See, e.g., Reppert v. Beasley*, 943 S.W.2d 172, 175 (Tex. App.—San Antonio 1997, no writ).

*2. Statement of Law*

As stated, "when a trial court renders judgment based on a Rule 11 agreement, the signed judgment must comply literally with the terms of the agreement." *In re S.R.S.*, No. 12-20-00130-CV, 2020 WL 4463122, at *3 (Tex. App.—Tyler July 15, 2020, no pet.) (mem. op.) (citing *Tinney*, 897 S.W.2d at 544); *accord Vickrey*, 532 S.W.2d at 292 (citing *Edwards v. Gifford*, 155 S.W.2d 786, 788 (Tex. 1941); *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex. Comm'n App. 1921)). "A trial court has no power to supply terms, provisions, or details not previously agreed to by the parties." *In re S.R.S.*, 2020 WL 4463122, at *3 (citing *Tinney*, 897 S.W.2d at 544). When it does so, it renders the parties' agreement unenforceable. *See Interest of C.E.H.*, No. 09-19-00120-CV, 2020 WL 5666081, at *3 (Tex. App.—Beaumont Sept. 24, 2020, no pet.) (citing *Clanin*, 918 S.W.2d at 678). However, even if one of the parties would prefer the agreement to be declared unenforceable, a party to an agreement does not have the right to retract consent after the judgment is rendered. *See id*. at *2; *Travelers Ins. Co. v. Williams*, 603 S.W.2d 258, 262 (Tex. Civ. App.—Corpus Christi 1980, no writ) (citing *Campbell v. Campbell*, 362 S.W.2d 904 (Tex. Civ. App.—Austin 1962, writ dism'd)). Rather, if the agreement has been rendered as judgment of the court, the trial court must enter an order that conforms to the agreement. *See Clanin*, 918 S.W.2d at 678; *Tinney*, 897 S.W.2d at 545 n.2.

As stated above, the Court of Appeals may correct clerical variance between a judgment orally rendered in open court and the judgment eventually entered. *See In the Interest of A.M.*, No. 04-16-00335-CV, 2017 WL 1337648, at *5 (Tex. App.—San Antonio 2017, no pet.) (mem.op.) (citing *McLendon*, 847 S.W.2d at 610); *accord Matter of Marriage of Ames*, 860 S.W.2d at 594. "Whether such an error is clerical or judicial is a question of law." *McLendon*, 847 S.W.2d at 610 (citing *Catlett v. Catlett*, 630 S.W.2d 478, 483 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.)). A clerical variance can be defined as one that occurs after rendition of the judgment. *See, e.g., In*

*re Daredia*, 317 S.W.3d 247, 249 (Tex. 2010) (per curiam) (orig. proceeding) ("[O]nly errors made in entering a judgment are clerical; an error in rendition is judicial."); *see also Texas Dept. of Transp. v. A.P.I. Pipe and Supply, LLC*, 397 S.W.3d 162, 167 (Tex. 2013) ("If 'the signed judgment inaccurately reflects the true decision of the court,' then 'the error is clerical and may be corrected.'") (quoting *Andrews v. Koch*, 702 S.W.2d 584, 586 (Tex. 1986)); *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986) ("The court can only correct the entry of a final written judgment that incorrectly states the judgment actually rendered.").

### 3. Analysis

The errors complained of by Appellant are alleged discrepancies between the parties' Rule 11 agreement, which the trial court orally rendered as judgment, and the entered judgment. In this section, we examine the alleged errors and correct the disparities as clerical variances. *See Escobar*, 711 S.W.2d at 231. To be clear, every confirmed discrepancy between the rendered judgment and the entered judgment is being corrected as clerical error. *See id*.

**Modification Order—conservatorship terms**

Appellant first argues that the modification order does not conform to the Rule 11 agreement on conservatorship terms. Specifically, he notes that he did not agree that Appellee could designate the residence of the children without geographic restriction. He also notes that he did not agree that his right to attend the children's school activities were subject to the protective order.

The transcript does not reflect that the parties agreed to the term "without restriction." As a clerical error, we strike it in the judgment. *See Interest of R.H.B.*, No. 04-21-00038-CV, 2022 WL 946640, at *7 (Tex. App.—San Antonio Mar. 30, 2022, no pet. h.). However, the transcript does reflect that the parties agreed to incorporate Appellee's written request for injunction into their agreed protective order. The written injunction states, for example, that Appellant may not

be within 1,000 yards of Appellee. They agreed that an exception would be carved out for the oldest child's graduation. But there was no agreement to carve out an exception for other school activities. Therefore, we do not modify the provision that subjects Appellant's right to attend school functions to the protective order.

**Modification Order—DBT terms**

Appellant next argues that his agreement to attend therapy should not be stated in decretal terms. However, the transcript shows that parties agreed to have their stipulations become an order of the court. *See Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979). Therefore, we do not amend the decretal language.

Conversely, the parties did not specifically agree that violations of the Rule 11 agreement would be subject to contempt. Regardless of whether it might follow logically, we will strike reference to contempt in the judgment. *See Rosales v. Rosales*, No. 04-05-00906-CV, 2006 WL 2955602, at *3 (Tex. App.—San Antonio Oct. 18, 2006, pet. denied) (mem. op.) (citing *Donzis v. McLaughlin*, 981 S.W.2d 58, 63 (Tex. App.—San Antonio 1998, no pet.)).

Appellant next argues that Dr. Murphey, not Dr. Theis, would serve as gatekeeper and monitor Appellant's therapy. He also argues that he did not specifically agree to participate in "group and individual therapy," but rather that his course of therapy was to be directed by a therapist. The judgment states that Appellant's therapy will include group sessions and it identifies only Dr. Theis as Appellant's therapy monitor. We determine that these issues are clerical and modify these terms in the judgment accordingly. *See Vickrey*, 532 S.W.2d at 292.

**Modification Order—how relocation will be communicated to the children**

Appellant argues that the Rule 11 Agreement specified that Appellant, his wife, and family members would be supportive of Appellee's move to Arkansas, not that every person connected to him was bound by the same agreement. The transcript of the Rule 11 hearing supports

Appellant's contention. The trial court's entered judgment, however, includes Appellant's "agents, servants, employees, and attorneys; and those persons in active concert or participation with him who receives actual notice of this Order by personal service or otherwise and specifically including the current spouse…." Because the language in the judgment fails to conform with the language of the rendered judgment, we modify the terms in the judgment accordingly. *See id.*

**Modification Order—SoberLink terms, possession of the children**

Appellant argues that his compliance with the SoberLink program was not meant to be court-ordered, that his possession of the children should not be subject to the SoberLink court order, and that his possession of the children should not be conditioned on court-ordered therapy. As noted above, the transcript shows that the parties agreed to have these stipulations become an order of the court. *See Ex parte Gorena*, 595 S.W.2d at 844. Per the transcript, Appellant agreed to include in the court's order the requirement that he engage in therapy, at his sole cost and expense, authorize release of records and notification of compliance or noncompliance with therapy, and that "[i]f there are violations of the SoberLink monitoring program or any other program that we may to agree to, his periods of possession of the children will be automatically suspended pending further order of the court." Therefore, we do not amend the decretal language.

**Modification Order—possession terms**

Appellant argues that the modification order impermissibly changed his possession schedule before Appellee's relocation to Arkansas. The transcript states that the "current visitation schedule will stay in place" pending Appellee's move to Arkansas. The judgment, however, specifies terms and requirements under the section heading "Possession Through the End of 2020," which the parties did not agree to at the Rule 11 hearing, and which the trial court did not render as its judgment. We agree that the language regarding "Possession Through the End of 2020" in

the modification order does not match the rendered judgment. Therefore, we strike subsection (c) of the possession order, "Possession Through the End of 2020." *See Vickrey*, 532 S.W.2d at 292.

Appellant argues that the modification order restricts monthly weekend visits to the regular school term, and that the restriction was not part of the Rule 11 agreement. The transcript supports Appellant's complaint, and we strike the language under subsection (d) referring to the regular school term as well as the language referring to school recessing and resuming. *See id.* We will insert language from the rendered judgment referring to weekends beginning at 6 p.m. on Friday and ending at 6 p.m. on Sunday.

Appellant argues that the modification order does not give him the benefit of the three-day weekend he bargained for. Based on the changes to the regular school term language, we agree, and change the order to reflect the parties' agreement regarding three-day weekends. *See id.* The change is noted in the judgment.

Appellant argues that the modification order imposes a 14-day notice requirement not agreed to in the Rule 11 agreement. The transcript supports Appellant's complaint, and we modify the judgment to omit the requirement. *See id.*

Appellant argues that the modification order restricts Appellant to weekends that do not conflict with holidays, which the Rule 11 agreement did not cover. Because this restriction was not included at the time of the trial court's oral rendition of the judgment, we omit the restriction as a clerical error. *See id.*

Appellant argues that the entered modification order contemplates weekend visits occurring outside of Arkansas, which the Rule 11 agreement did not consider. The transcript states only that Appellant will visit his children in Arkansas, whereas the judgment states that Appellant will visit the children "in the locale in which the children reside." Because the written entry does

not conform to the rendered judgment, we amend the order to specify weekend visits in Arkansas. *See id.*

Appellant argues that the possession terms in the trial court's entered judgment incorrectly refer to "court ordered therapy." However, according to the transcript of the Rule 11 hearing, parties agreed to have their stipulations be rendered an order of the court. "Once the agreement of the parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court." *Ex parte Gorena*, 595 S.W.2d at 844. The transcript of the Rule 11 hearing makes clear that Appellant agreed to be required to participate in therapy. The word "ordered" reflects that agreed upon requirement in the judgment. *See Durden v. McClure*, 281 S.W.3d 137, 141 (Tex. App.—San Antonio 2008, no pet.). We do not amend the order's language on this point.

Appellant argues that the Rule 11 agreement did not discuss holiday possession by either party. We agree. In the entered judgment, however, holiday possession is covered under subsection (g), "Holidays Unaffected by Distance in 2021." Because this discrepancy occurs between the orally rendered judgment and the entered judgment, we omit it as a clerical variance. *See Vickrey*, 532 S.W.2d at 292.

**Modification Order—attorney's fees**

Regarding Appellee's attorney's fees, Appellant argues that the entered judgment exceeds the terms of the Rule 11 agreement orally rendered by the court. The Rule 11 transcript states: "And for the work performed for mom's attorney's fees separate and apart from our agreements on Monday in regards to the modification action, the application for protective order, and the tort action, dad is to pay me (Ms. Deyeso) $60,000 upon entry of the modification order." The entered judgment states that Appellant owes the money to Ms. Deyeso "with interest at six percent (6%) per year compounded annually from the date this Order is signed until paid," and that Ms. Deyeso

"may enforce this judgment for fees, expenses, and costs in her own name by any means available for the enforcement of a judgment for debt." Because the language in the entered judgment does not strictly conform with the trial court's oral rendition of judgment, we strike the language under the Attorney's Fees and Expenses section that goes beyond the language from the Rule 11 agreement. *See id*.

**Modification Order—tort claim severance**

Appellant argues that the Rule 11 agreement did not cover severance of Appellee's tort claims. The Rule 11 transcript does not show that the parties agreed to, or the trial court rendered any judgment severing Appellee's tort claims. Nevertheless, the judgment states that Appellee's tort claims are severed. Since this language was not included at the time the trial court orally rendered judgment, we strike the language severing Appellee's tort claims in the modification order. *See id.*

**Modification Order—other terms**

Appellant states he did not agree to pick up his children in Arkansas at a police station designated by Appellee, though the entered order includes that stipulation. We agree that this condition from the entered judgment does not conform with the orally rendered judgment. We therefore strike subparts 1. and 2. of subsection (h) General Terms and Conditions. *See id.*

Appellant states he did not agree to be solely responsible for "all costs associated in any manner" with his exercise of his long-distance periods of possession, though the entered judgment includes that stated condition. We agree that the Rule 11 transcript does not state Appellant is responsible for "all costs associated in any manner" with his exercise of his long-distance periods of possession. We therefore revise subpart 8. of subsection (h) to require Appellant to pay all transportation costs. *See id.*

Appellant states he did not agree to deliver passports to Appellee by December 4, 2020, though the stipulation is included in the entered judgment. We agree that the Rule 11 transcript does not include the condition, and we therefore strike that section (Passport Provisions) from the modification order. *See id.*

Appellant states he did not agree to have all periods of possession not awarded to him to be automatically awarded to Appellee, though the entered judgment includes that stipulation. We agree that it is not a provision from the parties' Rule 11 agreement, which the trial court orally rendered as its judgment, and strike that section (Undesignated Periods of Possession) from the modification order. *See id.*

Appellant states the provisions for a wage withholding order for child support were not part of the Rule 11 agreement, though it is included in the entered judgment. Appellant is correct that no wage withholding section was included in the orally rendered judgment. We strike that section (Child Support) from the modification order. *See id.*

Appellant argues the provisions for medical support were not part of the Rule 11 agreement, though they are included in the entered judgment. We agree that the provisions for medical support were not included in the orally rendered judgment and strike that section (Medical Support & Obligation to Provide Health Insurance Coverage) from the modification order. In its place, we insert a section for Children's Counseling and Expenses, with the following stipulations from the Rule 11 agreement: Once in Arkansas, the children must engage in counseling with a Ph.D.-level therapist. The therapist will determine how often the visits should occur. Dad must pay one hundred percent of the uninsured portion of the children's counseling expenses. *See id.*

Appellant argues that he did not agree to the extensive provisions for use of the Our Family Wizard app contained in the modification order. We agree that the details of the Our Family Wizard section exceed the rendered Rule 11 judgment. The parties stipulated: "All communication

between the parents shall only be via Our Family Wizard except in the event of a medical emergency involving the children and then it can be via text." Therefore, we preserve the second paragraph of the Our Family Wizard section and strike the rest. *See id.*

Appellant argues that the injunctive relief set forth in the modification order was not part of the Rule 11 agreement. At the Rule 11 hearing, the parties agreed to incorporate Appellee's requested injunctive relief. They are the same terms listed in the Injunctive Relief section of the modification order with one exception: we strike the second paragraph of the Injunctive Relief section as exceeding the terms of the rendered Rule 11 judgment. *See id.*

Appellant argues that the terms for release and return of the child's cellular number were not part of the Rule 11 agreement, though they are included in the entered judgment. We agree that the terms for release and return of the child's cellular number were not included in the trial court's rendered judgment and strike that section (Release and Return of Cellular Telephone Number to Petitioner by Respondent) of the modification order. *See id.*

Appellant argues that he did not agree to pay court costs, though that requirement is contained in the entered judgment. We agree that this requirement was not included at the time of the orally rendered judgment and strike the first paragraph of the Attorney's Fees and Expenses section. *See id.*

**Protective Order**

Appellant argues that the Rule 11 agreement did not provide for a lifetime protective order, interim attorney's fees, or a ten-day deadline for paying the fees, though the terms are included in the entered judgment. He argues that the Rule 11 agreement did not obligate him to waive a court's lack of personal jurisdiction over him, though the entered judgment contains such a waiver. We agree that the orally rendered judgment did not include these provisions. We strike the following language: 1) From the section title *Authorization to Seek Additional Relief, Agreement for Personal*

*Jurisdiction & Award of Interim Attorney's Fees and Litigation Expenses*, we strike the words "Agreement for Personal Jurisdiction," "interim," "and Litigation Expenses;" 2) subsection 1. language stating "including, but not limited to, seeking a lifetime PROTECTIVE ORDER against JUSTIN W. LITTLE; 3) subsection 2. language stating "consents to submit himself to the personal jurisdiction of the Court where CHRISTY B. LITTLE may reside at the time;" and 4) subsection 2. language stating "as interim attorney's fees and litigation expenses following the initiation by her of that suit, to be paid within ten (10) days of the filing of that suit." However, Appellant also argues that Appellee was required to prevail in a future suit regarding the enforceability of the protective order before Appellant would be entitled to receive $100,000. We disagree that the parties specified this stipulation. According to the transcript, the parties agreed to the following at the Rule 11 hearing:

> In the event that there is any problem with the enforceability of this order now or in the future or as a result of future conduct by dad, mom will be authorized to seek additional relief from the court. Dad will be obligated to immediately pay her $100,000 in attorney's fees and there will be no prohibition that would exclude any of the evidence that has been or could have been introduced at this hearing in any future proceedings.

Therefore, we do not amend the judgment to include language that Appellee must prevail in a future suit regarding the enforceability of the protective order before Appellant would be entitled to receive $100,000. *See id*.

Appellant argues that the protective order exceeds the terms of the Rule 11 agreement by prohibiting him from violating Texas law. We agree that the orally rendered judgment did not include this prohibition, and we strike Protective Order subsections a. and b. *See id.*

Based on our resolution of point of error two (removing added terms), we need not address Appellant's third point of error (requiring evidence to support added terms).

**Pending Motions**

After the parties' briefs were submitted for review, Appellee filed two motions: 1) for attorney fees based on an allegation of frivolous appeal, and 2) to strike Appellant's reply brief to the extent that it introduced a new issue.

Because we have extensively modified the Rule 11 orders, we deny Appellee's motion for attorney fees based on an allegation of frivolous appeal.

Regarding Appellee's motion to strike Appellant's reply brief to the extent that it introduced a new issue, we disagree. Appellee contends that any argument Appellant made regarding judicial error should be stricken as "new." We disagree because Appellee raised the issue of a clerical error in the response brief. *See McLendon v. McLendon*, 847 S.W.2d 601, 610 (Tex. App.—Dallas 1992, writ denied) (distinguishing clerical from judicial error). Furthermore, the point is moot because we have affirmed the trial court's order as modified. Appellee's pending motions are denied.

**Conclusion**

Based on our review of the record, we conclude that the parties' agreement did not lack material terms or essential elements that would render it unenforceable. However, we also conclude that the trial court entered orders that failed to match the rendered judgment. Therefore, we have amended the language of the orders to match the terms of the judgment rendered.

Patricia O. Alvarez, Justice